Aaron W. Baker, OSB No. 922220
aaron@awbakerlaw.com
Serena L. Liss, OSB No. 154799
serena@awbakerlaw.com
BAKER LAW PC
1 SW Columbia, Suite 1850
Portland, OR 97204
Phone: 503/ 234-8800
Fax: 503/ 525-0650

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **KELLY SCHNEYER,** | Case No. 3:20-cv-2224 |
| Plaintiff, | |
| v. | COMPLAINT |
| **AP PROFESSIONALS OF PHOENIX, LLC dba AP PROFESSIONALS; and NIKE, INC.,** | (ORS 659A.040; ORS 659A.112; ORS 659A.109; ORS 652.140; ORS 652.150; ORS 653.060; and FLSA Discrimination) |
| Defendants. | **DEMAND FOR JURY TRIAL** |

**Nature of the Action**

1.

Plaintiff brings this action for monetary relief, damages, costs, punitive damages and attorney fees for herself to redress injuries done to her by Defendants

**1 | Complaint**

AP Professionals of Phoenix, LLC  dba AP Professionals, Nike, Inc., their officers,
employees, agents, or subsidiaries of Defendants in contravention of her rights
under her state protected rights under Oregon Revised Statutes ORS 659A.040;
ORS 659A.112; ORS 659A.109; ORS 652.140; ORS 652.150; ORS 653.060; and Fair
Labor Standards Act ("FLSA").

## Jurisdictional Allegations

### 2.

The court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332
as Plaintiff is a citizen of a different state than Defendant AP Professionals of
Phoenix, LLC, and the amount in controversy exceeds $75,000. The court also has
jurisdiction over Plaintiff's federal claim pursuant to 42 U.S.C. § 2000 *et seq.*, 28
U.S.C. §§ 1331, 1343, and supplemental jurisdiction over Plaintiff's state claims
pursuant to 42 U.S.C. § 1367 as the state claims arise from the same nucleus of
operative facts as the federal claims.

### 3.

Venue is proper within the District of Oregon, Portland Division, pursuant to
28 U.S.C. § 1391(b) because all or substantially all of Plaintiff's claims arose in this
judicial district, and Defendants do business in this judicial district in Washington
County, Oregon.

## General Factual Allegations

### 4.

Plaintiff is a resident of Beaverton, Oregon.

### 5.

Defendant AP Professionals of Phoenix, LLC dba AP Professionals
("Defendant AP Professionals") is a foreign limited liability company doing business
in Oregon.

6.

Defendant Nike, Inc. ("Defendant Nike") is a domestic business corporation with its principal place of business in Beaverton, Oregon.

7.

Defendants employed Plaintiff in Beaverton, Oregon.

8.

At all material times, Defendants employed at least 25 employees.

9.

At all material times, Plaintiff was supervised by Defendants' employees or agents and Plaintiff relied on the actual or apparent authority of Defendants' employees, supervisors, and management to act for Defendants.

10.

On or about August 8, 2018, Defendant AP Professionals hired Plaintiff as a consultant. That same day, Defendant AP Professionals assigned Plaintiff to Defendant Nike to work as a program manager. Plaintiff was a non-exempt hourly employee subject to overtime.

11.

Plaintiff performed her job duties as assigned.

12.

Plaintiff has medical conditions that substantially limit one or more major life activity. Despite Plaintiff's disabilities and/or perceived disabilities she was able, with or without accommodation, to perform the essential functions of her position.

13.

On or about August 10, 2018, Plaintiff disclosed her medical conditions to Defendant Nike's manager, Janet Neron. Plaintiff requested as a reasonable

accommodation to work from home approximately two mornings per month. Plaintiff explained to Neron that her symptoms, without the accommodation, might appear to be performance issues, which primarily would include being late to morning meetings. Defendant Nike did not engage in the interactive process regarding Plaintiff's request for accommodation.

14.

On or about August 16, 2018, Neron complained about an employee's Americans with Disabilities ("ADA") accommodation and disclosed confidential medical information about the employee.

15.

On or about August 31, 2018, Neron complained to Defendant AP Professionals' Recruiter, Leslie Pomerleau, that Plaintiff was working remotely. Plaintiff had previously notified her team that she would be out of the office. Plaintiff felt singled out because Defendant Nike's employees and contractors often work from home—and outside of their offices on the Nike campus. Plaintiff does not believe Neron informed Pomerleau that the reason Plaintiff was working from home that morning was her disability.

16.

On or about August 31, 2018, Plaintiff disclosed her medical conditions to Pomerleau and requested reasonable accommodations. Plaintiff explained that her symptoms, without accommodation, might appear to be performance issues, which primarily would include being late to morning meetings. Defendant AP Professionals did not engage in the interactive process regarding Plaintiff's request for accommodation. Instead, Pomerleau advised Plaintiff not to discuss her health issues at work.

///

17.

On or about September 4, 2018, Neron called Defendant AP Professionals'
vice president, Larry Mills, to tell him that Plaintiff did not finish her work. Neron
knew Plaintiff intended to complete some work after hours on Friday night.
However, Plaintiff was delayed due to a flare up of her disability. Plaintiff did not
disclose the reason for the delay to Neron because Pomerleau had advised Plaintiff
not to talk about her health and/or disability at work.

18.

In or about mid-September of 2018, Plaintiff told Pomerleau again about her
medical conditions and requested accommodations. Again, Defendant AP
Professionals did not engage in the interactive process.

19.

In or around September of 2018, Plaintiff informed Pomerleau that she was
having problems with Neron "co-opting" Plaintiff's duties. Plaintiff explained to
Pomerleau that she felt targeted due to her disabilities and/or her requests for
accommodation because Neron did not treat anyone else in that manner.

20.

On or about September 19, 2018, Plaintiff suffered a flare up of her disabling
conditions. She sent an email to her team explaining that she would attend the
scheduled meeting remotely. Immediately following the meeting, Neron called
Plaintiff to berate her about being two minutes late to the meeting. Plaintiff
reported this incident to Pomerleau who told Plaintiff that Neron had sent an email
to Defendant AP Professionals stating that Plaintiff was not reliable. Pomerleau
asked Plaintiff to apologize to Neron.

///

///

**5 | Complaint**

21.

On or about September 20, 2018, Plaintiff again asked Pomerleau to move forward with the ADA accommodation process. Plaintiff also told Pomerleau that Plaintiff had told Neron that Plaintiff was working with Defendant AP Professionals to initiate ADA accommodations, which would potentially include working from home on occasion. Plaintiff sent an email to Neron informing her that Plaintiff's condition had been exacerbated and that she was having issues advancing the ADA accommodation process with Defendant AP Professionals.

22.

On or about September 24, 2018, Mills contacted Plaintiff regarding her requests for accommodation. Specifically, Mills told Plaintiff that if she began experiencing symptoms of her disability, she should "just pick up your laptop and don't tell anyone where you are going" or words to that effect, and that Plaintiff should hide in a conference room. Mills told Plaintiff to "just deliver" or words to that effect.

23.

Beginning on or about September 28, 2018, Neron would have telephone calls with Plaintiff after each team meeting. During the conversations, Plaintiff told Neron that she needed to rebalance her workload because Plaintiff was working more than 40 hours per week but was not being paid for those overtime hours. Plaintiff did not submit her actual hours worked because she was afraid of reprisal. Plaintiff had been working an estimated 50 to 60 hours per week since mid-September of 2018. Other members of management were allowed to rebalance their workloads.

///

///

24.

Beginning on or about October 1, 2018, Neron restricted Plaintiff's ability to perform her duties, such as leading team sessions. Neron dismissed Plaintiff's work, shot down Plaintiff's work, or erased Plaintiff's work. However, after Neron would dismiss, shoot down, or erase Plaintiff's work, Neron would recreate a mirror image of the work Plaintiff had done. No other program managers were treated similarly.

25.

Beginning on or about October 1, 2018, Plaintiff stopped taking her lunch breaks because of the relentless pressure from Neron. Plaintiff again requested to rebalance her workload due to working overtime without being paid for that overtime. Regularly, Plaintiff would work until 2:00 a.m. Neron was aware of the hours Plaintiff worked.

26.

On or about October 15, 2018, Neron yelled at Plaintiff and another coworker, both of whom had requested ADA accommodations. Plaintiff does not know of any incidents during which Neron yelled at or was otherwise hostile toward employees who had not requested ADA accommodations.

27.

On or about October 26, 2018, Plaintiff sustained an on-the-job injury and Plaintiff's medical conditions were exacerbated as a result of the stress of being denied accommodations by Defendants due to the stress caused by Defendants' treatment of Plaintiff. Plaintiff did not seek medical care because she did not want to tell Defendants that her medical condition had worsened. Plaintiff was also concerned that Defendants would further target her and/or retaliate against her.

///

///

28.

On or about October 30, 2018, Plaintiff reported by email to Pomerleau that Neron had been abusing Plaintiff. Pomerleau did not respond to Plaintiff's email.

29.

On or about November 2, 2018, Plaintiff met with Pomerleau and Mills to discuss the email Plaintiff sent on October 30, 2018. During the meeting, Plaintiff disclosed that she had been working overtime without being paid for that time. Plaintiff also told Pomerleau and Mills that Neron yelled at her and would not allow Plaintiff to rebalance her workload. Mills acknowledged that Plaintiff needed to be paid the overtime but did nothing thereafter to assist Plaintiff. Pomerleau told Plaintiff that it is normal to be yelled at by leadership. Defendant AP Professionals did not engage in the interactive process regarding Plaintiff's multiple requests for accommodations.

30.

On or about November 7, 2018, Plaintiff learned she was the only person on her team working until 2:00 a.m. most weeknights.

31.

On or about November 8, 2018, Plaintiff met with Defendant AP Professionals' recruiter, Tina Wood, and a Nike Flex representative. Defendants terminated Plaintiff's employment.

32.

After Plaintiff's employment was terminated, Plaintiff reported to Defendant AP Professionals that she sustained and on-the-job injury and Plaintiff invoked the Oregon Workers' Compensation system. Since Plaintiff's termination, Defendant AP Professionals has not provided Plaintiff with another assignment.

///

33.

Plaintiff timely filed complaints with Oregon's Bureau of Labor and
Industries (hereinafter "BOLI") against Defendants. On or about September 23,
2020, BOLI issued a Notice of Right to File a Civil Suit.

## First Claim for Relief

### (Workers' Compensation Retaliation – ORS 659A.040)

34.

Plaintiff realleges paragraphs 1 through 33 above as fully set forth herein.

35.

Defendants retaliated against Plaintiff in the terms and conditions of her
employment, singled her out for discipline, subjected Plaintiff to heightened
scrutiny, created a hostile work environment, and terminated Plaintiff's
employment in substantial part for receiving a work-related injury and for applying
for benefits or invoking or utilizing the procedures provided for in ORS chapter 656.

36.

As a direct and proximate result of Defendants' conduct, Plaintiff has
suffered and will continue to suffer mental stress, emotional distress, humiliation,
inconvenience and loss of enjoyment of life all to her non-pecuniary loss to be
determined at trial.

37.

As a direct and proximate result of Defendants' conduct, Plaintiff has
suffered and continues to suffer economic loss in a sum to be proven at trial, which
amount is alleged to include lost opportunities while employed and at least
$12,266.67 per month from the time of her termination and continuing into the
future.

///

38.

Defendants' conduct was wanton and willful, and Plaintiff should be awarded punitive damages in an amount to be determined at trial.

39.

Pursuant to ORS 20.107 and ORS 659A.885, Plaintiff is entitled to recover her reasonable attorney fees, expert fees, costs, and disbursements.

## Second Claim for Relief

### (Disability/Perceived Disability Discrimination - ORS 659A.112)

40.

Plaintiff realleges paragraphs 1 through 39.

41.

At all material times, Plaintiff had a disability and/or perceived disability as defined in ORS 659A.104. Despite Plaintiff's disability and/or perceived disability she was able, with or without accommodation, to perform the essential functions of her position.

42.

Defendants knew about Plaintiff's disability. Alternatively, Defendants perceived Plaintiff to be disabled and/or Plaintiff had a record of such disability at all material times.

43.

Defendants' treatment and termination of Plaintiff's employment was substantially motivated by her disability/perceived disability and constitutes unlawful disability discrimination in violation of ORS 659A.112.

44.

Plaintiff realleges her damages and request for costs and attorney fees as stated in paragraphs 36 through 39.

## Third Claim for Relief

### (Disability/Perceived Disability Retaliation - ORS 659A.109)

45.

Plaintiff realleges paragraphs 1 through 44.

46.

Plaintiff engaged in protected activity under 659A.109, including but not limited to requesting a reasonable accommodation for her medical condition.

47.

Defendants retaliated against Plaintiff in the terms and conditions of her employment, singled her out for discipline, subjected Plaintiff to heightened scrutiny, created a hostile work environment, and terminated Plaintiff's employment in violation of 659A.109 for engaging in protected activity.

48.

Plaintiff realleges her damages and request for costs and attorney fees as stated in paragraphs 36 through 39.

## Fourth Claim for Relief

### (Retaliation – FLSA)

49.

Plaintiff realleges paragraphs 1 through 48.

49.

Defendants retaliated against Plaintiff in the terms and conditions of her employment, singled her out for discipline, subjected Plaintiff to heightened scrutiny, created a hostile work environment, and terminated Plaintiff's employment in violation of the Fair Labor Standards Act 29 U.S.C. § 215.

///

///

50.

Pursuant to 29 U.S.C. § 216, Plaintiff is entitled to liquidated damages equal to the amount of wages lost, the exact amount to be determined at trial.

51.

Pursuant to 29 U.S.C. § 216, Plaintiff is entitled to reasonable attorney fees.

## Fifth Claim for Relief

## (Wages – ORS 652.140, ORS 652.150)

52.

Plaintiff realleges paragraphs 1 through 51 above as fully set forth herein.

53.

Defendants failed to pay wages for overtime hours worked at the time they were due.

54.

Pursuant to ORS 653.055 and ORS 652.150, Plaintiff is entitled to penalty wages in an amount the be determined at trial.

55.

Plaintiff is entitled to 9% interest per annum on all wages and penalty wages from the date they became due until paid in full pursuant to ORS 82.010.

56.

Pursuant to ORS 20.107 and ORS 652.200, Plaintiff is entitled to recover her reasonable attorneys fees, expert fees, costs, and disbursements.

## Sixth Claim for Relief

## (Wage Retaliation – ORS 653.060)

57.

Plaintiff realleges paragraphs 1 through 56 above as fully set forth herein.

///

58.

Defendants retaliated against Plaintiff in the terms and conditions of her employment, singled her out for discipline, subjected Plaintiff to heightened scrutiny, created a hostile work environment, and terminated Plaintiff's employment in substantial part for inquiring about Defendants' failure to pay overtime wages.

59.

As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer mental stress, emotional distress, humiliation, inconvenience and loss of enjoyment of life all to her non-pecuniary loss to be determined at trial.

60.

As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer economic loss in a sum to be proven at trial, which amount is alleged to include lost opportunities while employed and at least $12,266.67 per month from the time of her termination and continuing into the future.

61.

Pursuant to ORS 20.107 and ORS 659A.885, Plaintiff is entitled to recover her reasonable attorney fees, expert fees, costs and disbursements.

### Prayer for Relief

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For permanent injunctive relief enjoining Defendants, its officers, employees and agents from engaging in any discrimination, retaliation, or harassment;

2. Economic damages and future losses to be determined at trial;

3. Non-economic damages to be determined at trial;

4.      Punitive damages in an amount to be determined at trial;

5.      Liquidated damages in an amount to be determined at trial;

6.      Wages in an amount to be determined at trial;

7.      Penalty wages in an amount to be determined at trial;

8.      Reasonable costs and attorney's fees; and

9.      For such other and further relief as the Court may deem just and equitable.


DATED this 21st day of December, 2020.


                        BAKER LAW PC


                        *s/Serena L. Liss*
                        Aaron W. Baker, OSB No. 922220
                        Serena L. Liss, OSB No. 154799
                        Attorneys for Plaintiff